IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                                  Case Nos.:  3:15cr69/TKW/EMT
                                                                                          3:17cv389/TKW/EMT

WILLIAM R. LUCAS

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF Nos. 111, 114), the Government's response thereto (ECF No. 116), and Defendant's reply (ECF No. 117). The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). After a review of the record and the arguments presented, the undersigned recommends that the § 2255 motion be denied without a hearing. *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

PROCEDURAL BACKGROUND

Defendant William R. Lucas and two others were charged in a two-count indictment with conspiracy to distribute and possess with intent to distribute methamphetamine ("Count One") and conspiracy to use communication devices to

facilitate the commission of a felony ("Count Two") (ECF No. 3). The indictment charged that, with respect to Count One, the amount of methamphetamine attributable to Lucas as a result of his own conduct or reasonably foreseeable conduct of other coconspirators was 50 grams of more of pure methamphetamine, its salts, isomers, and salts of its isomers, and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of 21 U.S.C. § 841(b)(1)(A)(viii). This statute provides for a minimum-mandatory term of ten-years imprisonment up to a maximum of life. However, relevant to Defendant's case, at the time of his conviction, a person who violated this provision after a prior conviction for a serious drug felony had become final was subject to a minimum-mandatory term of twenty-years imprisonment. The Government filed a Notice of Enhancement Information indicating its intent to seek the increased penalty in Defendant's case (ECF No. 23).

Magistrate Judge Charles Kahn conducted a thorough rearraignment proceeding on February 10, 2016, following which he recommended that the district court accept Defendant's guilty plea (ECF Nos. 70–75, 105). District Judge Rodgers accepted Defendant's guilty plea (ECF No. 76). Defendant was represented throughout the proceedings by retained counsel Clinton Couch, Esq.

Case Nos.: 3:15cr69/TKW/EMT; 3:17cv389/TKW/EMT

Defendant's final Presentence Investigation Report ("PSR") calculated his total offense level as 33, and his criminal history category as III (ECF No. 95). His total offense level included a three-level downward adjustment for acceptance of responsibility and a two-level enhancement for maintaining a premises for the purposes of manufacturing or distributing a controlled substance, the objection to which was withdrawn at sentencing. The applicable guidelines range of 168 to 210 months became 240 months due to the statutory mandatory minimum sentence (*id.*, PSR ¶ 84).

At sentencing, defense counsel recognized that the court was "required under law to sentence [Defendant] to not less than 240 months" (ECF No. 106 at 3). Defendant did not mention the sentence he faced in his allocution (*id.* at 9–10). The Government (AUSA David Goldberg) spoke to matters relevant to a potential future reconsideration of Defendant's sentence (*id*. at 12–13; *see also id.* at 5–6). The court imposed the required 240-month sentence on Count One and ordered it to run concurrent to any yet-to-be-imposed state sentence (*id.* at 22; *see* PSR ¶ 46).

Defendant did not appeal, but timely filed the instant § 2255 motion, through counsel, on June 2, 2017. Defendant claims that Mr. Couch was constitutionally ineffective for misadvising him that he would receive a maximum sentence of ten years if he pleaded guilty and cooperated with the Government, and as a result of

this misadvice his plea was unknowing and involuntary. He further claims that, but for this advice, he would not have pleaded guilty.

## The Plea Colloquy

The plea colloquy is critical to the court's analysis of Defendant's claims. Defendant appeared at the plea colloquy along with his retained attorney, Clinton Couch, Esq. Defendant was placed under oath.[1] After its introductory remarks, the court advised Defendant that if he entered a guilty plea, he would be giving up certain rights, and he would not be able to question the actions or advice of his lawyer up to that point (ECF No. 105 at 6).

The court advised Defendant he could stop and consult with counsel at any time. Defendant advised he court he had received a copy of the indictment and the enhancement information, but counsel took a moment for an off-the-record discussion to refresh Defendant's recollection about the documents they had previously discussed (ECF No. 105 at 16–17). The court noted the Government would also explain later what the enhancement document meant in terms of potential sentencing (*id.* at 17).

---

[1] There is a typographical error in the transcript reflecting the court's remark as "you are *not* under oath" instead of "you are *now* under oath" (ECF No. 105 at 8).

Case Nos.: 3:15cr69/TKW/EMT; 3:17cv389/TKW/EMT

The court questioned Defendant thoroughly about his expectations and understanding regarding the possible sentence he faced. The following exchange took place:

> THE COURT: Has Mr. Couch promised you, made any specific promise to you about the exact sentence that you're going to get in this case?
>
> DEFENDANT: No, sir.
>
> THE COURT: Has he explained to you that only—this is Judge Rodgers' case—that only Judge Rodgers will be able to determine the sentence and that that won't be done until the time of sentencing. Has he explained that to you?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: Has Mr. Couch given you any information about this case, including information about the sentence, and then told you not to tell the judge about it?
>
> THE DEFENDANT: No, Sir.
>
> THE COURT: Has Mr. Couch told you that the Government, either through Mr. Goldberg, or anyone else, has already agreed to a sentence in this case?
>
> THE DEFENDANT: No, Sir.

(ECF No. 105 at 24–25.)

Defendant then assured the court he had read and discussed the Plea Agreement and Supplement with counsel before signing those documents and had

no question about them. He indicated, twice, that he understood that the Plea Agreement did not entitle him to a particular sentence. Defendant agreed the decision whether to file a substantial assistance motion rested in the discretion of the United States Attorney, and that if such a motion was filed, the decision to grant relief rested in the discretion of the district judge. Defendant denied that "anyone—including [his] lawyer, friends, family, or anyone else at all—made any promise to [him] about anything concerning [his] sentence that was not covered in the Plea Agreement" (ECF No. 105 at 25–29.)

Mr. Goldberg explained the penalties Defendant faced, including the mandatory minimum of twenty years to life imprisonment on Count One. Defendant again indicated he had no questions and he understood that there was a minimum mandatory sentence on Count One. He also confirmed his understanding that this minimum mandatory sentence would trump a lower guidelines calculation (ECF No. 105 at 31–33).

Defendant affirmed his understanding that by entering a guilty plea, he waived the right to challenge the validity of the earlier state conviction that was used to support the enhanced penalty in his case.

> THE COURT: You also understand and agree that this earlier state conviction may at that point, after you plead guilty, be used by the

Case Nos.: 3:15cr69/TKW/EMT; 3:17cv389/TKW/EMT

Government in the present case to seek an enhanced sentence. Do you understand that?

THE DEFENDANT: Yes, Sir.

THE COURT: Is it the enhancement information that leads this to be a 20-year minimum rather than a 10-year minimum?

MR. GOLDBERG: That's accurate, Your Honor.

THE COURT: So it may be that another defendant in this case would be looking at a 10-year minimum mandatory because there's no enhancement information. You understand that that's the case here?

THE DEFENDANT: Yes, sir.

(ECF No. 105 at 37.)

The court also advised Defendant that if he had any expectations about his sentence, despite everything the court had gone over with him, and his expectations were different from the sentence the district court ultimately imposed, this would not provide a basis to challenge his guilty plea (ECF No. 105 at 38). Again, Defendant indicated he understood. The court then asked Defendant if, having been through the hearing and fully considered all the paperwork, it was still his desire to enter a plea of guilty. After this question, Mr. Couch requested permission to speak with his client before Defendant responded. After the consultation, the court repeated its question about Defendant's intent, and Defendant affirmed his desire to enter a guilty plea (*id*. at 39).

Case Nos.: 3:15cr69/TKW/EMT; 3:17cv389/TKW/EMT

The court found Defendant was fully competent and capable of entering an informed plea, he was aware of the nature of the charges and the consequences of the plea, and his plea was voluntary, intelligent, and knowing (ECF No. 105 at 40–41).

## ANALYSIS

<u>General Standard of Review</u>

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). *Strickland*'s two-part test also applies to guilty pleas. *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). A defendant will be required to show that but for counsel's errors, he would not have pleaded

guilty and would have instead insisted on proceeding to trial. *Id.* at 163 (quoting *Hill*, 474 U.S. at 59). A defendant's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish" prejudice. *Pericles v. United States*, 567 F. App'x 776, 782 (11th Cir. 2014) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)); *Rosin v. United States*, 786 F.3d 873 (11th Cir. 2015). A defendant must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler*

Page 10 of 20

*v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant

a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). In the case of alleged sentencing errors, a defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). However, a hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir.

2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Here, the analysis of Defendant's claim will rely heavily on what transpired at the plea colloquy. A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citing *Blackledge*). This is because solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin,* 767 F. 3d at 1216 (citing *Blackledge*). They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice. *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin*, 767 F.3d at 1216. In fact, such allegations are subject to summary dismissal. *Winthrop-Redin*, 767 F.3d at 1216 (citing *Blackledge*, 431 U.S. at 74). A defendant "bears a heavy burden to show his statements [under oath] were false." *Winthrop-Redin,*

767 F.3d at 1217 (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)). "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (quoting *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)); *see also United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion . . . include credible, valid reasons why a departure from those earlier contradictory statements is now justified.")

Defendant's Claim

Defendant claims that he only chose to enter a plea based on counsel's promise that if he pleaded guilty and agreed to cooperate with the Government he "would be looking at a minimum of 7.5 years to 10 years imprisonment" (ECF No. 114-1 at 2). Because he was sentenced significantly above this "promised" range, he asserts his plea was unknowing and involuntary. As will be shown herein, his claim is contradicted by the record.

Both Defendant and his mother, Sharon Bailey, filed affidavits in support of Defendant's motion. Ms. Bailey states that she and Tanya Lucas, Defendant's wife, met with Mr. Couch at his office on March 2, 2016. During this meeting,

Couch told Ms. Bailey that "by [Defendant] pleading guilty and cooperating with the authorities, he would get a sentence of between 7.5 to 10 years imprisonment" (ECF No. 111-3). The meeting took place approximately three weeks after Defendant's February 10, 2016, rearraignment.

In his own affidavit, Defendant explains that during one of his initial meetings with Mr. Couch, Couch asked if he wanted to cooperate with the Government. Defendant responded that it was "an option" and asked what sort of sentence reduction he would receive if he cooperated. Couch informed him "without hesitation that [he] would receive 7.5 years if [he] provided [his] assistance" (ECF No. 114-1 at 1). At a subsequent meeting, Couch told him he would receive "no more than ten years' imprisonment" if he cooperated and pleaded guilty (*id*. at 2). When asked about any room for negotiation, Couch purportedly reiterated that Defendant would be facing from 7.5 to 10 years' imprisonment. In Couch's opinion, they could not win at trial, and Defendant should enter a plea.

Defendant recalls that at the change of plea hearing, the magistrate judge asked him if he had been promised any specific sentence. He states:

> *At this time*, I had a discussion with Mr. Couch off the record. I asked Mr. Couch if we should discuss the cooperation agreement. Mr. Couch told me that it was not applicable here. That it was something between the prosecutor and us. So I told the court that I had not been

made any promises based on Mr. Couch's advice during my plea hearing.

(ECF No. 114-1 at 2–3 (emphasis added).)  Defendant's recollection is not supported by the record.

Despite what Defendant states in his affidavit and reiterates in his reply, the transcript of the plea colloquy reflects that he responded directly, without consulting counsel, to the court's question about whether Couch had made any specific promises about the exact sentence (*see* ECF No. 105 at 24–25). The conference with counsel to which Defendant refers in both his memorandum and his reply occurred at a later point in the proceedings, after the court asked whether it was still Defendant's desire to change his plea to guilty in the case (*id.* at 38–39). Thus, the conference during which counsel allegedly told Defendant not to mention the agreement between them and the prosecutor occurred well after Defendant had already denied, under oath, both the existence of other agreements and any expectation of a sentence below the statutory mandatory minimum of 20-years imprisonment.[2]

---

[2] The only other off-the-record discussion was near the beginning of the proceedings when counsel and Defendant paused to discuss the charging and enhancement documents (ECF No. 105 at 17). However, through his record citations, Defendant specifically identified the later conference as the one during which counsel made the remark in question (ECF No. 111-1 at 2–3; ECF No. 117 at 3).

Case Nos.: 3:15cr69/TKW/EMT; 3:17cv389/TKW/EMT

Defendant's recollection is also contradicted by the sworn affidavit of his seasoned defense counsel. In response to Defendant's claim that counsel advised Defendant he would be sentenced to "7.5 years" if he provided assistance, counsel states: "This is a lie. It is not an error, a mistake, or a misunderstanding. I have never said, and would never say, anything of the sort, and Mr. Lucas knows that very well" (ECF No. 116-1 at 3). Couch points out the Plea Agreement where Defendant placed his initials directly below the underlined provision stating that he faced a minimum mandatory sentence of 20 years (*see* ECF No. 72 at 1), and he reiterates that he told Defendant on several occasions about the mandatory minimum sentence he faced.

Counsel also notes that although Defendant hoped to provide substantial assistance to the Government, it "was made very clear to Mr. Lucas that absolutely no promises were being made as to a guaranteed reduced sentence," both by counsel directly and in the written Supplement, which Defendant initialed (ECF No. 116-1 at 3). Defendant thus knew that it was incumbent upon the Government to file the substantial assistance motion, if appropriate, and upon the court to rule on the motion if it was filed.

Couch recalls Defendant asking what would happen if the Government filed a substantial assistance motion. Couch told his client that, in his experience, it was

common for the court to cut the sentence in half, and given Defendant's honorable military career, the sentence could be reduced even further. However, in every conversation counsel reiterated that no one was making any promises about Defendant's ultimate sentence (ECF No. 116-1 at 4).

Defendant now contends that his representations at the time of his guilty plea were the product of "misunderstanding, duress or misrepresentation by others" (ECF No. 111-1 at 5–6; ECF No. 117 at 2). The record does not support this conclusory assertion. Even if the court were to find credible Defendant's recollection of counsel's remarks regarding whether Defendant should disclose the alleged "secret" agreement with the Government, all of his statements to the court regarding his understanding of the mandatory minimum sentence he faced occurred <u>before</u> the conference during which counsel allegedly made these statements. Furthermore, regardless of what Defendant may claim he was told before entering his plea, the thorough colloquy left no room for misunderstanding.

Finally, the undersigned notes that Defendant's claim that he received no benefit for his guilty plea is mistaken. All things being equal, had he been convicted after a trial, he would not have received a three-level reduction for acceptance of responsibility. Therefore, the advisory guidelines range would have been 235 to 293 months, or 240 to 293 months after consideration of the statutory

Case Nos.: 3:15cr69/TKW/EMT; 3:17cv389/TKW/EMT

mandatory minimum.   Defendant also hoped to obtain additional benefits from his guilty plea and, although these did not materialize, they were *possible*; had he proceeded to trial, however, there likely would have been no chance of such benefits.

### Conclusion

While Defendant is correct that conflicting affidavits will frequently require an evidentiary hearing, he has not met his burden of showing that a hearing is required in this case.   He has not brought forth credible valid reasons why this court should disregard his previous sworn testimony at the rearraignment proceeding.   The court further finds Mr. Couch's performance was not constitutionally deficient under *Strickland.*   Therefore, Defendant's motion should be denied in its entirety.

### Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84

(2000) (explaining how to satisfy this showing) (citation omitted).   Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.   The Motion to Vacate, Set Aside, or Correct Sentence (ECF No. 111) be **DENIED**.

2.   A certificate of appealability be **DENIED**.

At Pensacola, Florida, this 24th day of February 2020.

*Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>   A copy of objections shall be served upon all other

Case Nos.: 3:15cr69/TKW/EMT; 3:17cv389/TKW/EMT

**parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.